UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| LEEANN L., : | |
|     Plaintiff, : | |
| : | |
|     v. : | C.A. No. 21-484WES |
| : | |
| KILOLO KIJAKAZI, : | |
| Acting Commissioner of Social Security, : | |
|     Defendant. : | |

**REPORT AND RECOMMENDATION**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

On March 25, 2020, Plaintiff Leeann L., a "younger" individual, applied for Supplemental Security Income ("SSI") pursuant to the Social Security Act (the "Act").[1] She alleges disability beginning on October 22, 2018, resulting from functional limitations caused by the impairments of pseudotumor cerebri,[2] multiple sclerosis ("MS") and anxiety. ECF No. 13 at 1-2. An administrative law judge ("ALJ") accepted that Plaintiff suffers from these medically determinable impairments and more,[3] but concluded that none has significantly limited her ability to work for twelve consecutive months and that Plaintiff therefore does not have any "severe" impairments, ending the disability analysis at Step Two. Tr. 18-22.

Plaintiff has moved for reversal of the decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application. Plaintiff contends that the ALJ

---

[1] Plaintiff also applied for disability insurance benefits ("DIB") pursuant to Title II of the Act but, in light of her date last insured (September 30, 2015), the parties agree that only the SSI application is now in issue.

[2] As summarized in Wikipedia, "[i]diopathic intracranial hypertension (IIH), previously known as pseudotumor cerebri and benign intracranial hypertension, is a condition characterized by increased intracranial pressure (pressure around the brain) without a detectable cause. The main symptoms are headache, vision problems, ringing in the ears, and shoulder pain. Complications may include vision loss." Idiopathic intracranial hypertension, WIKIPEDIA, https://en.wikipedia.org/wiki/Idiopathic_intracranial_hypertension (last visited on Dec. 1, 2022).

[3] The ALJ found Plaintiff has the following medically determinable impairments: MS, dysuria, headaches, benign intracranial hypertension, pseudotumor cerebri, obesity and anxiety disorder. Tr. 18.

erred because the record contains significant evidence that points to severe limitations: (1) in relying on what she alleges are the unreliable administrative findings of the state agency ("SA") expert physician, Dr. Henry Laurelli; and (2) in discounting Plaintiff's subjective statements because he failed to cite to substantial contradictory evidence as required by Sacilowski v. Saul, 959 F.3d 431, 438 (1st Cir. 2020).  ECF No. 13 at 11-14.

I.     **Standard of Review**

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g).  Substantial evidence is more than a mere scintilla – that is, the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019); Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam).  Once the Court concludes that the decision is supported by substantial evidence, the Commissioner must be affirmed, even if the Court would have reached a contrary result as finder of fact.  Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987) (per curiam); see also Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991); Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127, 128-31 (1st Cir. 1981).  The determination of substantiality is based upon an evaluation of the record as a whole.  Mary K v. Berryhill, 317 F. Supp. 3d 664, 666 (D.R.I. 2018); see also Frustaglia v. Sec'y of Health & Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177, 1180 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).  In reviewing the record, the Court must avoid reinterpreting the evidence or otherwise substituting its own judgment for that of the Secretary. See Colon v. Sec'y of Health & Human Servs., 877 F.2d 148, 153 (1st Cir. 1989).  The

"resolution of conflicts in the evidence is for the Secretary, not the courts." Irlanda Ortiz, 955 F.2d at 76. The Court's role in reviewing the Commissioner's decision is limited. Brown v. Apfel, 71 F. Supp. 2d 28, 30 (D.R.I. 1999), aff'd, 230 F.3d 1347 (1st Cir. 2000).

## II.     Disability Determination

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 416(i); 20 C.F.R. § 416.905(a). The impairment must be severe, making the claimant unable to do previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.905, 911.

### A.     The Five-Step Evaluation

The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. § 416.920. First, if a claimant is working at a substantial gainful activity, the claimant is not disabled. 20 C.F.R. § 416.920(b). Second, if a claimant does not have any impairment or combination of impairments that significantly limit physical or mental ability to do basic work activities, then the claimant does not have a severe impairment and is not disabled. 20 C.F.R. § 416.920(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Appendix 1, the claimant is disabled. 20 C.F.R. § 416.920(d). Fourth, if a claimant's impairments do not prevent doing past relevant work, the claimant is not disabled. 20 C.F.R. § 416.920(e)-(f). Fifth, if a claimant's impairments (considering RFC,[4] age, education and past work) prevent doing other work that exists in the local or national economy, a finding of disabled

---

[4] RFC refers to "residual functional capacity." It is "the most you can still do despite your limitations," taking into account "[y]our impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what you can do in a work setting." 20 C.F.R. § 416.945(a)(1).

3

is warranted. 20 C.F.R. § 416.920(g). Significantly, the claimant bears the burden of proof at Steps One through Four, but the Commissioner bears the burden at Step Five. Sacilowski, 959 F.3d at 434.

### B. Step Two Determination

The disability analysis ends at Step Two if a claimant has a medically determinable impairment that has not been "severe" for a consecutive twelve-month period. 20 C.F.R. § 416.920(a)(4)(ii). "An impairment . . . is not severe if it does not significantly limit [the claimant's] . . . mental ability to do basic work activities." 20 C.F.R. § 416.922(a). Basic work activities include "[u]nderstanding, carrying out, and remembering simple instructions; [u]se of judgment; [r]esponding appropriately to supervision, co-workers and usual work situations; and [d]ealing with changes in a routine work setting." 20 C.F.R. § 922 (b)(3)-(6). Non-severity is found where the medical evidence establishes no more than a slight abnormality that would have only a minimal effect on an individual's ability to work. SSR 85-28, 1985 WL 56856, at *2 (Jan. 1, 1985). Step Two is a screening device used to eliminate applicants "whose impairments are so minimal that, as a matter of common sense, they are clearly not disabled from gainful employment." McDonald v. Sec'y of Health & Human Servs., 795 F.2d 1118, 1123 (1st Cir. 1986); Burge v. Colvin, C.A. No. 15-279S, 2016 WL 8138980, at *7 (D.R.I. Dec. 7, 2016), adopted sub nom., Burge v. Berryhill, 2017 WL 435753 (D.R.I. Feb. 1, 2017). At Step Two, Plaintiff bears the burden of demonstrating that she had a "medically determinable" physical or mental impairment(s) that significantly limited her ability to do basic work activity at the relevant time. Luz R. v. Saul, C.A. No. 19-00307-WES, 2020 WL 1026815, at *6 (D.R.I. Mar. 3, 2020).

### C. Evaluation of Claims of Mental Impairment

The evaluation of a claim of disability based on mental illness requires use of a psychiatric review technique ("PRT") that assesses impairment in four work-related broad functional areas: (1) understanding, remembering or applying information; (2) interacting with others; (3) concentration, persistence or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. § 416.920a(c)(3). The ALJ uses a five-point rating scale: none, mild, moderate, marked, and extreme. 20 C.F.R. § 416.920a(c)(4). If the impairment causes no or "mild" difficulties in these areas, the ALJ generally will find that it is not severe. 20 C.F.R. § 416.920a(d)(1). The PRT is used to rate the severity of mental impairments at Steps Two and Three of the sequential evaluation process and, if found to be severe, also serves as the backdrop for the more detailed mental RFC assessment at Step Four. See, e.g., Wells v. Colvin, 727 F.3d 1061, 1069 (10th Cir. 2013); SSR 96-8p, 1996 WL 374184, at *4 (July 2, 1996).

### III.   Analysis

Plaintiff's appeal principally rests on her subjective testimonial statements during the ALJ hearing that her diagnosed impairment of pseudotumor cerebri causes headaches that occur three or four days per week and last on average for eight or more hours, which force her to lie down with the lights off, spending the entire day in bed, Tr. 38-39, as well as that exertion such as standing causes severe fatigue, weakness, dizziness, anxiety, sharp pain and body aches. Tr. 34-36. To support her arguments, Plaintiff cites Sacilowski, 959 F.3d 431, contending that the ALJ should not have relied on the SA physician expert, Dr. Laurelli,[5] because Dr. Laurelli relied on the finding of the treating neurologist, Dr. Albert Marano, that the headaches are not "too bothersome" but omitted the balance of Dr. Marano's note, which references the duration of the

---

[5] Plaintiff also attacks the ALJ for relying on the DIB expert analyses, for example that of Dr. Mark Mahoney. ECF No. 13 at 11-13. With DIB not in issue, I have ignored this argument.

headaches as "last about 1 hour., but up to a few hours if more tension type," Tr. 600, as well as because Dr. Laurelli did not consider the risk of absenteeism due to headaches. ECF No. 13 at 12-13. Sacilowski, together with Avery v. Sec'y of Health & Hum. Servs., 797 F.2d 19, 20 (1st Cir. 1986), also forms the foundation of Plaintiff's second argument that the ALJ should have given controlling weight to Plaintiff's hearing testimony and less or no weight to the medical record reflecting her far more benign subjective description of symptoms to treating providers. Finally, labeled as a third argument is Plaintiff's contention that, with no weight to be afforded to the rest of the evidence, this Court should rely on the absence of any conflicting evidence that undermines Plaintiff's hearing testimony as required by Sacilowski to find that Plaintiff cannot work and remand for an award of benefits. ECF No. 13 at 15.

These arguments fail because Plaintiff's hearing testimony sharply contrasts with and is contradicted by both subjective and objective notations in the medical record.

Specifically, during the period in issue, Plaintiff received medical treatment from her primary care team at Atmed Primary Care ("Atmed").[6] During virtually every one of more than twelve appointments at Atmed, providers recorded Plaintiff's subjective complaints in the "Review of Systems" ("ROS")[7] section of the record– these consistently reflect "Negative for . . . fatigue . . . .Negative for chest pain . . . abdominal pain . . . arthralgias and myalgias . . . Negative for dizziness, weakness and headaches . . . The patient is not nervous/anxious." E.g., Tr. 285, 322, 642-43. Atmed providers also recorded their objective observations in the "Physical Exam"

---

[6] Plaintiff was also monitored by an eye specialist. Apart from "floaters," the record findings regarding vision are benign. Tr. 36-37; see Tr. 347 ("recent ophthalmology exam stable").

[7] The "Review of Systems" section of the treating notes inventories the patient's subjective complaints and not the physician's objective findings on examination. Doreene S. v. Kijakazi, No. CV 21-318WES, 2022 WL 2980854, at *4 n.5 (D.R.I. July 28, 2022) (citing Stivers v. Colvin, 3:15-cv-00270-BAS-NLS, 2016 WL 8731091, at *9 (S.D. Cal. Jan. 15, 2016), adopted, 2016 WL 889905 (S.D. Cal. Mar. 9, 2016)).

6

portion of the record, which reflect consistently normal findings, including "No distress . . . Normal range of motion . . . no tenderness . . . alert . . . normal mood and affect." E.g., Tr. 285, 466-67, 643; see Tr. 315 (headache "[m]ostly resolved at this time"); Tr. 464 ("Anxiety [d]oing well"); Tr. 642 ("Multiple sclerosis . . . P[atient] denies any change in symptoms"; "headaches . . . [s]table").

For much of the period in issue, Plaintiff also received medical treatment from a neurologist, Dr. Albert Marano. Dr. Marano's notes over at least ten appointments are similar. E.g., Tr. 345-46 (ROS: negative for fatigue, weakness, chest pain, abdominal pain, muscle pain, joint pain back pain, headache, dizziness ataxia, numbness, anxiety depression; on examination, alert, normal muscle tone, with only finding "floaters" likely caused by "benign intracranial hypertension"). As Dr. Marano repeatedly noted, despite MRI findings strongly suggestive of MS, giving rise to the need for careful monitoring because of the likelihood of serious disease in the future, throughout the period in issue, Plaintiff remained "asymptomatic." Tr. 351-52; see Tr. 348 ("patient is entirely asymptomatic neurologically"); Tr. 600 ("[n]o new concerns"); Tr. 663 ("[n]o new neurologic concerns"). Dr. Marano's notes consistently reflect that headaches were not frequent and their duration was not protracted. Tr. 346 ("headaches have occurred mildly . . . not intractable and severe"); Tr. 347 (headaches "well controlled"); Tr. 353 (headaches "are manageable"). At the last appointment of record, Dr. Marano's ROS reflects no headaches, no dizziness, no fatigue, no anxiety and no depression; he wrote, "[s]till feels well." Tr. 666-67. At worst, Dr. Marano's notes reflect Plaintiff's report of, for example, fewer than five headaches in the preceding month that lasted "about [an] hour," although the duration may be a "few hours" if it is a "tension type" headache, which the record reflects are infrequent. Tr.

7

355, 600; see Tr. 315 ("chronic tension-type headache, not intractable [m]ostly resolved at this time").

The SA physician expert, Dr. Laurelli, examined this record. His professional interpretation resulted in his finding that the clinical test results and the observations on neurologic and ophthalmological examination regarding pseudotumor cerebri and MS establish that they are not severe. Tr. 57. Dr. Laurelli also specifically focused on Plaintiff's allegations of fatigue, tingling, numbness, dizziness, and severe headaches, noting that:

> Headaches not bothersome. There were no back, muscle or joint pains. There were no constitutional symptoms, less tired. Further, notes tingling not noticed much.

Id. Ultimately, Dr. Laurelli found that Plaintiff has MS and pseudotumor cerebri, but that neither has (yet) caused "severe" limitations. Id. An SA psychologist, Dr. Pamela Steadman-Wood, also examined the file but her review appears to focus only on the period prior to the last-insured date in 2015. With no mental health treatment, she found insufficient evidence to adjudicate the claim and determined that no mental medically determinable impairment was established. Id.

Regarding Plaintiff's alleged physical impairments, the ALJ found Dr. Laurelli's findings persuasive and relied on them. In compliance with Sacilowski, he also appropriately and accurately compared Plaintiff's testimony regarding her symptoms not only to the inconsistent objective findings by providers, but also to her own inconsistent subjective statements to providers, particularly her repeated reports that she was not experiencing weakness, headaches, arthralgias, myalgias, dizziness or fatigue, her statements that headaches occurred infrequently, and her statements confirmed by provider observations that the headaches were "well-controlled" and that she was "doing well." Tr. 19-20 (referencing Tr. 322, 666-67).

8

Regarding Plaintiff's alleged anxiety, the ALJ found Dr. Pamela Steadman-Wood's opinion was less persuasive because, during the period in issue, both the Atmed and Marano notes list "anxiety" as an established diagnosis. Tr. 20. But, as the ALJ accurately noted, Atmed's ROS section consistently includes the subjective statement that "patient is not nervous/anxious," while Atmed providers just as consistently made the objective observation of "normal mood and affect." E.g., Tr. 285, 459, 613. Dr. Marano's notes are similarly benign from a mental health perspective. E.g., Tr. 345 (Dr. Marano's ROS reflects no anxiety or depression). Based on the entirety of the record,[8] the ALJ properly performed the PRT analysis, resulting in the finding of no limitations in any functional area and in the conclusion that anxiety, while a medically determinable impairment, does not rise to the level of "severe." Tr. 20-21.

The Court's review of the entirety of the record confirms that the ALJ's findings are well-supported by a wide array of evidence, including Dr. Laurelli's expert findings and the subjective statements and objective findings in the medical record. Boiled to its essence, Plaintiff's arguments ask the Court to reject all of this contrary evidence as lacking substantiality, leaving only her hearing testimony, which, if accepted at face value, supports a finding of disability.

Plaintiff begins by tackling the administrative findings of the SA experts, arguing that the ALJ should have rejected Dr. Laurelli's findings because, although he accurately summarized Dr. Marano's finding that the headaches were "not bothersome," he failed to quote the entirety of Dr. Marano's note of February 6, 2020, which reads:

---

[8] In performing the PRT analysis, the ALJ appropriately referenced many record references, including those reflecting Plaintiff's activities, for example, that Plaintiff was able to marry and honeymoon in Las Vegas during the relevant period, as well as Plaintiff's report to a medical provider that she had "currently stopped school at [Community College of Rhode Island] due to COVID," not because of her impairments. Tr. 21 (referencing Tr. 464).

9

> Overall feels OK, just feels tired. HA are not too bothersome, last about 1 hour., but up to a few hours if more tension type.

Tr. 600; see Tr. 602 ("feels better with diet and trying to be more active, feeling less tired"). This argument fails because it is clear that Dr. Laurelli was appropriately relying on Dr. Marano's conclusion – that the headaches **were not bothersome** despite sometimes lasting more than one hour, up to a "few hours." Tr. 600. To the Court, this reference – read in full, in context, as Plaintiff contends – still directly and dramatically contradicts Plaintiff's hearing testimony that, far from being "not too bothersome," the headaches were catastrophic in their impact, forcing her to spend most of her waking hours lying in a darkened room. Tr. 600; see Tr. 38-39. Further, the record is otherwise replete with ample evidence supporting Dr. Laurelli's finding that the headaches were not severely limiting.[9]

Based on the foregoing, I find no error in the ALJ's reliance on Dr. Laurelli's administrative findings. Further, with no medical evidence to support the proposition that the headaches were so severe as to cause absenteeism (except for Plaintiff's thoroughly contradicted testimony at the ALJ hearing), I also find no error in Dr. Laurelli's failure to consider the risk of absenteeism. This case is materially different from Sacilowski, where the medical record, supported by opinion evidence, documented "multiple migraine headaches per week" that would impact ability to attend work. 959 F.3d at 435-36 (when medical record includes evidence of symptoms that would impact attendance, failure of SA experts and ALJ to address absenteeism is error requiring remand).

---

[9] For example, focusing on Plaintiff's statements about the frequency of headaches to her medical providers, in April 2019, she stated that headaches "have occurred mildly 3 times in the past six months." Tr. 346. In September 2019, Plaintiff complained of three headaches since her last appointment (four months prior), which she described as an "improvement." Tr. 349. At her next appointment, Plaintiff reported no headaches since her last appointment. Tr. 351. And during the ensuing period (more than a month later), she reported only two to three headaches, which she described as "manageable." Tr. 353. As the ALJ observed, Plaintiff told treatment providers that her headaches were "well-controlled" with medication. Tr. 20; see Tr. 347.

10

Plaintiff's second argument is equally unavailing. She contends that the ALJ committed the error of extreme insistence on objective findings to corroborate subjective testimony. ECF No. 13 at 13. To support that contention and to overcome the ALJ's clear reliance on Plaintiff's own subjective statements to medical providers, she contends that the Court should treat her own statements that appear in the notes of treating providers as lacking any weight because they are the "cold hearsay of a medical record," while giving full – indeed controlling – weight to her hearing testimony. ECF No. 13 at 14. This argument fails because it suffers from a familiar and fatal deficiency – it amounts to a request that the Court improperly reweigh the evidence. See Thomas P. v. Kijakazi, C.A. No. 21-00020-WES, 2022 WL 92651, at *8 (D.R.I. Jan. 10, 2022), adopted by Text Order (D.R.I. Mar. 31, 2022) ("Ultimately, Plaintiff's challenge to the ALJ's evaluation of the record in this case inappropriately asks this Court to reweigh the evidence in a manner more favorable to him.") (citing Seavey v. Barnhart, 276 F.3d 1, 10 (1st Cir. 2001)). Here the ALJ carefully reviewed all of the evidence with due and appropriate regard for all of Plaintiff's subjective statements and supportably found that the extreme statements she testified to during the hearing are directly contradicted. There is no error.

In sum, "[w]hile adjudicators are cautioned to exercise '[g]reat care' in applying the Step Two standard to deny benefits, . . . in this case, the ALJ got it right." Campos v. Colvin, No. CA 13–216 ML, 2014 WL 2453358, at *16 (D.R.I. June 2, 2014). I find that this ALJ reviewed and considered a medical record reflecting a potentially very serious diagnosis – MS – and related diagnoses of pseudotumor cerebri and anxiety. Mindful that a diagnosis alone cannot support a finding of disability, Peterson v. Barnhart, 213 Fed. App'x. 600, 604 (9th Cir. 2006) (diagnosis of MS alone does not satisfy Step 2 inquiry), he appropriately focused on the medical findings derived from Plaintiff's subjective reports to providers and the objective observations of

clinicians (assisted by the professional interpretation of the SA expert). Because the resulting decision is amply supported by substantial evidence, the ALJ's determination should be affirmed.

## IV. Conclusion

I recommend that Plaintiff's Motion to Reverse the Decision of the Commissioner (ECF No. 13) be DENIED and that Defendant's Motion for an Order Affirming the Decision of the Commissioner (ECF No. 16) be GRANTED. Any objection to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen (14) days of its receipt. See Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district judge and the right to appeal the Court's decision. See United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
December 1, 2022